1  **WO**

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8

9   Margaret Branscomb,                    )    No. CV 08-1328-PHX-JAT
                                           )
10              Plaintiff,                 )    **ORDER**
                                           )
11  vs.                                    )
                                           )
12                                         )
    Group USA, Inc.; et al.,               )
13                                         )
                Defendants.                )
14                                         )
    _____   )

15

16         Currently pending before the Court are Defendant's Motion for Summary Judgment

17  (Doc. 104) and Application for Attorneys' Fees Incurred Incident to Opposing Plaintiff's

18  Motion for Leave to Amend her Response in Opposition to Summary Judgment (Doc. 115).

19  The Court now rules on the Motions.

20         **I. BACKGROUND**

21         Plaintiff Margaret Branscomb worked as an alterationist in the bridal department of

22  Defendant Group USA's store in Tempe, Arizona.  Defendant employs alterationists to

23  custom fit its bridal gowns.

24         Plaintiff attended a bridal fair in Phoenix, Arizona in mid-July 2006.  While there,

25  Plaintiff met Claudia Bojorquez, the bridal department manager for Defendant's store in

26  Tempe. Plaintiff expressed an interest in obtaining an alterationist position with Defendant

27  and submitted an application listing more than twenty years of experience as an alterationist.

28         After submitting her application, Plaintiff interviewed with Patty Miller, Defendant's

1  bridal manager for the western region, and Alma Cervantes, the Tempe store manager.  Ms.

2  Miller offered Plaintiff a full-time alterationist position at the Tempe store, effective August

3  1, 2006.

4      According to Defendant, Plaintiff struggled from the beginning of her employment

5  with tardiness, inefficiency, and low bookings.  In her Response, Plaintiff does not dispute

6  that she was late to work, but claims she was late because of medical appointments.

7  (Plaintiff's Statement of Facts "PSOF," Doc. 111-2, ¶37.) Plaintiff does not indicate whether

8  she informed her employers of the reason for her tardiness.  Plaintiff makes no comment on

9  her perceived inefficiency, but claims that low bookings were not her fault because she could

10  provide alteration services only to customers that came into the store and requested

11  alterations.  (PSOF ¶¶38.)

12      Ms. Miller and Ms. Bojorquez spoke informally with Plaintiff about her inefficiency

13  and tardiness in mid-February 2007.  (Defendant's Statement of Facts "DSOF," Doc. 105,

14  ¶38.) Ms. Bojorquez, Ms. Cervantes, and Jackie Bari, the assistant store manager, met with

15  Plaintiff on March 8, 2007 to discuss her performance issues.  (DSOF ¶39.)  After that

16  discussion, Ms. Cervantes gave Plaintiff a written warning regarding performance issues.

17  (DSOF ¶40.)  Plaintiff sent a memorandum to Ms. Miller a week later denying that her

18  performance, proficiency, or productivity were lacking.  (DSOF ¶41.) Plaintiff also denied

19  that she acted inappropriately toward customers and characterized her evaluation as unfair.[1]

20  (Id.) Defendant claims that it received several complaints from customers regarding Plaintiff

21  from December 2006 through March of 2007.  (DSOF ¶42.)

22      Doctors diagnosed Plaintiff with a pituitary tumor in November of 2006.  (PSOF

23  ¶110.)  On March 12, 2007, Plaintiff informed her supervisors that she needed surgery for

24  the tumor and provided them with a note from her neurosurgeon, Dr. Byron Willis. (DSOF

25  ¶43.) Dr. Willis indicated that Plaintiff would have surgery on March 22, 2007, but that she

26  should be able to return to work six weeks after the operation without restrictions as

27

28      [1]Plaintiff did not complain in the memo of any type of discrimination or harassment.

- 2 -

1    tolerated.  (DSOF ¶45.)

2         Even though Plaintiff had not worked for Defendant for a year, Defendant granted her

3    an unpaid, protected leave of absence of three months.[2] (DSOF ¶¶44&46.)  Plaintiff had the

4    surgery and suffered no complications.  (DSOF ¶47.)  Plaintiff returned to work in June of

5    2007, after a three month absence, but only on a part-time basis.  Despite her part-time status,

6    Defendant continued Plaintiff's company-paid medical benefits, which were available only

7    to full-time employees.  (DSOF ¶52.)

8         During a scheduled visit to the Tempe store on July 18, 2007, Ms. Miller reviewed

9    some of the dresses that Plaintiff had altered and found Plaintiff's work unacceptable.

10   (DSOF ¶57.)  On July 26, 2007, Ms. Miller prepared a final written warning for Plaintiff,

11   which Plaintiff signed.  (DSOF ¶58.)  Plaintiff was placed on probation for thirty days and

12   warned that if her performance did not improve, she would be terminated.  (DSOF ¶59.)

13   On August 13, 2007, Ms. Bojorquez reviewed some of Plaintiff's dresses.  Ms.

14   Bojorquez found that Plaintiff was behind on some of her alteration jobs.  (DSOF ¶60.)  Ms.

15   Miller scheduled another trip to the Tempe store on August 28, 2007.  During that visit, Ms.

16   Miller showed Plaintiff photographs of the three dresses that Ms. Miller had found

17   unacceptable on Ms. Miller's last visit.  (DSOF ¶61.)  Ms. Miller discharged Plaintiff at that

18   time.

19   On March 27, 2007, Defendant hired Maria Luisa Flores to work as a temporary, part-

20   time alterationist during Plaintiff's medical leave.  (DSOF ¶63.)  Ms. Flores was over fifty-

21   four years old when Defendant hired her.  (DSOF ¶64.)  Defendant terminated Ms. Flores on

22   June 15, 2007, the date Plaintiff returned to work.  (DSOF ¶65.)  Defendant re-hired Ms.

23   Flores on July 10, 2007 to work part-time because Plaintiff was working only part-time and

24   the Tempe store needed a full-time alterationist.  (DSOF ¶66.)  Defendant hired Ms. Flores

25   as a full-time alterationist on August 28, 2007, after Defendant terminated Plaintiff.  (DSOF

26

27        [2]To qualify for protected leave under the Family and Medical Leave Act an employee
must have worked for a covered employer for at least twelve months.  *See, e.g., Bachelder*
28   *v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1119 n.2 (9th Cir. 2001).

1  ¶67.)

2      Plaintiff filed a charge of discrimination with the Equal Employment Opportunity

3  Commission against Defendant on September 27, 2007.  She filed this case on July 18, 2008.

4  She claims that Defendant discriminated against her on the basis of race, age, and disability.

5  Defendant filed the pending Motion for Summary Judgment on May 7, 2010.

6      **II.   MOTION FOR SUMMARY JUDGMENT**

7          **A. Legal Standard**

8      Summary judgment is appropriate when "the pleadings, depositions, answers to

9  interrogatories, and admissions on file, together with affidavits, if any, show that there is no

10  genuine issue as to any material fact and that the moving party is entitled to summary

11  judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, summary judgment is mandated,

12  "...against a party who fails to make a showing sufficient to establish the existence of an

13  element essential to that party's case, and on which that party will bear the burden of proof

14  at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

15      Initially, the movant bears the burden of pointing out to the Court the basis for the

16  motion and the elements of the causes of action upon which the non-movant will be unable

17  to establish a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the non-

18  movant to establish the existence of material fact.  *Id.*  The non-movant "must do more than

19  simply show that there is some metaphysical doubt as to the material facts" by "com[ing]

20  forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec.*

21  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P.

22  56(e)).  A dispute about a fact is "genuine" if the evidence is such that a reasonable jury

23  could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

24  242, 248 (1986).  The non-movant's bare assertions, standing alone, are insufficient to create

25  a material issue of fact and defeat a motion for summary judgment.  *Id.* at 247-48.  However,

26  in the summary judgment context, the Court construes all disputed facts in the light most

27  favorable to the non-moving party.  *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir.

28  2004).

1 **B. ANALYSIS AND CONCLUSION**

2 Plaintiff alleges six Counts in her First Amended Complaint (Doc. 26): Count I - Title

3 VII Race Discrimination; Count II - Title VII Race Harassment; Count III- §1981 Race

4 Discrimination; Count IV- §1983 Race Discrimination and Harassment; Count V - Violation

5 of the Americans with Disabilities Act; and Count VI - Violation of the Age Discrimination

6 in Employment Act. Plaintiff concedes that Defendant is not a state actor and that her §1983

7 claims necessarily fail as a matter of law. (Doc. 111-1 p.1.)  The Court therefore grants

8 summary judgment to Defendant on Plaintiff's Count IV for §1983 racial discrimination and

9 harassment.  This Order will address the remaining five Counts.

10 Plaintiff makes two preliminary arguments before defending the merits of her case.

11 Plaintiff first argues that Defendant is estopped from claiming it terminated Plaintiff for

12 legitimate business reasons because the administrative record from the Arizona Department

13 of Economic Security ("DES") shows that someone at Defendant, when asked about

14 Plaintiff's eligibility for unemployment benefits, indicated she had quit her job.  (Doc. 111-

15 10.)  Plaintiff cites the doctrine of judicial estoppel in support of this argument.

16 The doctrine of judicial estoppel precludes parties from asserting inconsistent

17 positions in different forums. *Fredenburg v. Contra Costa Co. Dep't of Health Servs*, 172

18 F.3d 1176, 1179 (9th Cir. 1999).  The doctrine is an equitable one. *Johnson v. Oregon Dep't*

19 *of Human Res., Rehabilitation Div.*, 41 F.3d 1361, 1368 (9th Cir. 1998).  The Court has

20 discretion in determining whether to apply the doctrine based on the specific facts of a case.

21 *Id*.

22 Courts should invoke judicial estoppel only when a party's position is "tantamount

23 to a knowing misrepresentation to or even fraud on the court."  *Id*. at 1369 (internal

24 quotations omitted).  Judicial estoppel does not apply when a party's inconsistent positions

25 are based on inadvertence or mistake. *Id*.  The Ninth Circuit Court of Appeals has expressed

26 a clear preference that courts simply consider inconsistent statements along with other

27 evidence under the summary judgment standard rather than apply the doctrine of judicial

28 estoppel. *Id.*

1    Plaintiff has presented no evidence that Defendant made knowing misrepresentations

2    to the Arizona DES to gain some advantage.  Defendant never claimed before the EEOC or

3    this Court that Plaintiff voluntarily left her position.  Defendant has maintained throughout

4    this judicial process that it terminated Plaintiff.  The Court finds nothing to indicate that

5    Defendant is playing "fast and loose" with the truth.  *Fredenburg*, 172 F.3d at 1179.  The

6    Court therefore will not apply judicial estoppel in this case.

7    Even if the Court felt it appropriate to apply the doctrine, application would lead to

8    absurd results here.  The Court disagrees with Plaintiff that the doctrine would preclude

9    Defendant from arguing it had legitimate, non-discriminatory reasons for terminating

10   Plaintiff.  Rather, the doctrine would preclude Defendant from arguing that it terminated

11   Plaintiff at all.  Plaintiff has admitted and relies on the fact that Defendant terminated her,

12   so she would not benefit from a finding that Defendant must stick with the assertion that

13   Plaintiff voluntarily quit.

14   Plaintiff next argues that the Court should, at the least, deny Defendant's Motion

15   because Defendant willfully destroyed relevant evidence.  Plaintiff argues that Defendant

16   destroyed bridal receipts that might have had positive comments about Plaintiff on the back

17   and therefore might have supported Plaintiff's claims. (PSOF ¶127.) Plaintiff cites to a letter

18   from Defendant's counsel to support this factual assertion.  The letter reads, in pertinent part,

19   "Group USA does not maintain alteration receipts, as a general practice.  However, certain

20   Group USA employees made contemporaneous notes or observations regarding Ms.

21   Branscomb's work for particular clients on the receipts themselves, and then placed those

22   receipts in Ms. Branscomb's personnel file.  Group USA does not separately maintain

23   receipts from the time period when Ms. Branscomb was employed, and accordingly has no

24   other receipts to produce." (Doc. 111-11.)

25   The Court has inherent authority to sanction a party who willfully destroys or

26   "spoils" evidence. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  To qualify

27   as willful destruction, the party has to have had some notice that the destroyed documents

28   were potentially relevant to the litigation before they were destroyed. *Id.*  Nothing in the

1    letter cited by Plaintiff indicates that litigation had even been filed when Defendant destroyed

2    the bridal receipts, let alone that the discarded receipts contained positive comments about

3    Plaintiff.

4          Plaintiff has not demonstrated that Defendant knew certain bridal receipts were

5    potentially relevant to litigation, but nonetheless destroyed them.  Plaintiff therefore has not

6    shown that Defendant willfully destroyed the bridal receipts.  Consequently, the Court will

7    not impose any sanctions on Defendant for the destruction of the receipts.

8          The Court now turns to Plaintiff's claims.

9          **1. Disability Discrimination**

10         Plaintiff claims that Defendant terminated her employment because of her disability.

11   To state a prima facie claim under the Americans with Disabilities Act (the "ADA"), Plaintiff

12   must demonstrate: that she is a disabled person within the meaning of the ADA; that she can

13   perform the essential functions of her job; and that Defendant terminated her because of her

14   disability.  *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999).  Because

15   Plaintiff has produced no direct evidence of discrimination, the Court will apply the burden

16   shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

17   If Plaintiff cannot make a prima facie case, the Court does not need to examine Defendant's

18   purported reasons for terminating her.

19         For purposes of the ADA, a disability is a "physical or mental impairment that

20   substantially limits one or more of the major life activities of the individual."  42 U.S.C.

21   §12102(2)(A).  Whether a condition constitutes a disability under the ADA involves three

22   inquiries: (1) whether the condition is a physical impairment, (2) whether the life activities

23   impaired by the condition amount to major life activities; and (3) whether the condition

24   substantially limits the performance of identified major life activities.  *Gribben v. United*

25   *Parcel Service, Inc.*, 528 F.3d 1166, 1169 (9th Cir. 2008).

26         The third factor, substantial limitation, has a physical and a temporal component.

27   Specifically, "an impairment is substantially limiting if it significantly restricts the duration,

28   manner or condition under which an individual can perform a particular major life activity

- 7 -

1   as compared to the average person in the general population's ability to perform that same

2   major life activity." 29 C.F.R. Pt. 1630, App. § 1630.2(j).  This is the physical component.

3          As to the temporal component, "temporary, non-chronic impairments of short

4   duration, with little or no long term or permanent impact, are usually not disabilities."  29

5   C.F.R. Pt. 1630, App. § 1630.2(j).  A temporary injury with minimal lasting effects does not

6   constitute a disability actionable under the ADA.  *Sanders v. Arneson Prods., Inc.*, 91 F.3d

7   1351, 1354 (9th Cir. 1996).

8          Plaintiff's alleged disability is the benign tumor she had removed from her pituitary

9   gland.  Plaintiff's neurosurgeon, Dr. Willis, has testified that he considers Plaintiff's surgery

10  a success and that she has suffered no complications or unusual side effects from the surgery.

11  (Doc. 105 Ex.25.)  He also stated that she had not indicated to him that she had any difficulty

12  performing her daily activities after the surgery.  (Id.)  Dr. Willis further testified that

13  Plaintiff had no permanent deficits with respect to her tumor.  (Id.)  There is no medical

14  evidence in the record that Plaintiff's tumor posed anything other than a temporary limitation

15  on her life activities, and the record demonstrates that Plaintiff viewed her medical condition

16  as temporary.  The Court therefore finds that Plaintiff is not a disabled person within the

17  meaning of the ADA.

18         In her Response to the Motion for Summary Judgment, Plaintiff does not concede that

19  no disability exists, but argues that it does not matter if a disability actually exists because

20  Defendant regarded her as disabled.  She claims Defendant terminated her because it

21  perceived her as suffering from a disability.  Plaintiff raises her "regarded as disabled" theory

22  for the first time in her Response. She did not make a "regarded as" claim in her Amended

23  Complaint.  Although the Court questions the propriety of raising this theory for the first time

24  in the Response, the Court will address the issue.

25         An employee may be "regarded as" disabled if: 1) an employer mistakenly believes

26  she has a physical impairment that substantially limits one or more major life activities or 2)

27  an employer mistakenly believes that an actual, nonlimiting impairment substantially limits

28  one or  more major life activities.  *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005-06 (9th

- 8 -

1    Cir. 2007)(citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)).  To state a

2    "regarded as" claim, a plaintiff must provide evidence of an employer's misperception or

3    subjective belief that the plaintiff is substantially impaired.  *Id.* at 1006.  A plaintiff must

4    show that her employer regards her as substantially limited in a major life activity and not

5    "just unable to meet a particular job performance standard."  *Id.* (citing *Murphy v. United*

6    *Parcel Serv., Inc.*, 527 U.S. 516, 524 (1999)).  If a plaintiff does not have direct evidence of

7    her employer's subjective belief that she is substantially limited in a major life activity, she

8    must further provide evidence that the impairment imputed to her is, objectively, a

9    substantially limiting impairment.  *Id.* (citing *Thornton v. McClatchy Newspapers, Inc.*, 261

10   F.3d 789, 798 (9th Cir. 2001)).

11          Plaintiff offers a single email and her testimony that Defendant did not want a part-

12   time alterationist as evidence of Defendant's perception of her as disabled.  The email reads:

13             I have a question in regards to Margaret Branscomb benefits.
               Since she will be working PT for I don't know how long, will
14             she still be qaulified (sic) for benefits? If so, how long can she
               be PT before she loses those benefits? She is PT status *for now*
15             due to doctors orders.

16   (Doc. 105 Ex.28)(emphasis added.)

17          Neither this email nor Plaintiff's testimony that Defendant did not want a part-time

18   alterationist raises a genuine issue of material fact regarding Defendant's subjective belief

19   that Plaintiff was disabled.  The email does nothing more than indicate that Defendant

20   temporarily placed Plaintiff on part time status per her doctor's note.  It in no way suggests

21   Defendant thought Plaintiff was incapable of engaging in major life activities.

22          Plaintiff's disability discrimination claim cannot survive summary judgment because

23   she has not met her prima facie burden of demonstrating she is a disabled person within the

24   meaning of the ADA.  Plaintiff has not introduced sufficient evidence to create an issue of

25   material fact regarding whether she was actually disabled or Defendant perceived her as

26   disabled at the time of her termination.  The Court therefore grants summary judgment to

27   Defendant on Plaintiff's ADA discrimination claim.

28

1          **2. Age Discrimination**

2          Plaintiff has not introduced any direct evidence of age discrimination.  The Court

3    therefore will apply the *McDonnell-Douglas* burden-shifting analysis to this claim as well.

4    Under *McDonnell-Douglas*, Plaintiff bears the initial burden of establishing a prima facie

5    case of discrimination.  *McDonnell-Douglas*, 411 U.S. at 802.  If she meets her burden, the

6    burden of production shifts to Defendant to produce evidence demonstrating a legitimate,

7    non-discriminatory reason for her termination.  *Id*.  If Defendant meets its burden of

8    production, then the presumption of discrimination drops from the case and Plaintiff must

9    show that the Defendant's alleged reasons for terminating her were merely a pretext for

10   discrimination.  *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004).

11         To establish a prima facie case of age discrimination under the Age Discrimination

12   in Employment Act (the "ADEA"), Plaintiff must demonstrate that she: 1) is at least forty

13   years old; 2) performed her job satisfactorily; 3) was terminated; and 4) was replaced by a

14   substantially younger employee with equal or inferior qualifications or that she was

15   discharged under circumstances otherwise giving rise to an inference of age discrimination.

16   *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir 2008)(internal quotations

17   omitted).  The degree of proof necessary to establish a prima face case of discrimination at

18   the summary judgment level is minimal.  *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094

19   (9th Cir. 2005).

20         Plaintiff has no problem meeting the first and third requirements for a prima facie case

21   of age discrimination because she was 68 years old at the time of her termination.  The Court

22   questions, however, whether Plaintiff has met her prima facie burden of demonstrating that

23   she was performing her job satisfactorily at the time of her termination.  The Court also notes

24   that Ms. Flores was 54 years old at the time she replaced Plaintiff and therefore a member

25   of the protected class herself.  But the fact that Ms. Flores was also a member of the age-

26   protected class does not foreclose Plaintiff's ability to meet her prima facie burden.  *See*

27   *Douglas v. Anderson*, 656 F.2d 528, 532 (9th Cir. 1981)(stating, "However, replacement by

28   even an older employee will not necessarily foreclose prima facie proof if other direct or

1  circumstantial evidence supports an inference of discrimination.").

2  Despite the weakness of Plaintiff's evidence, the Court will assume for purposes of

3  this Motion that she has met her prima facie burden.  The Court next considers whether

4  Defendant has offered legitimate, non-discriminatory reasons for terminating Plaintiff.

5  Defendant claims it terminated Plaintiff because of her tardiness, low productivity,

6  inefficiency, poor work quality and because of customer complaints.  Defendant has offered

7  Plaintiff's personnel file, which documents some of these problems.  Defendant has also

8  provided testimony regarding these issues.  The Court finds that Defendant has offered

9  legitimate, non-discriminatory reasons for firing Plaintiff.

10  Because Defendant has offered legitimate, non-discriminatory reasons for terminating

11  Plaintiff, Plaintiff must show that Defendant's stated reasons for termination were pretextual.

12  Plaintiff may establish pretext either directly, by persuading the Court that a discriminatory

13  reason more likely motivated Defendant to terminate her, or indirectly, by showing that

14  Defendant's proffered explanation is unworthy of credence.  *Diaz*, 521 F.3d at 1212.  At the

15  pretext stage of the summary judgment inquiry, Plaintiff must produce "specific, substantial

16  evidence of pretext."  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000).

17  Plaintiff has not offered any direct evidence that age discrimination more likely

18  motivated Defendant than performance issues to terminate Plaintiff.  None of Defendant's

19  employees ever made comments about Plaintiff's age, and Plaintiff was in her late 60s when

20  Defendant hired her.[3]  Plaintiff therefore must attempt to introduce indirect evidence

21  demonstrating that Defendant's stated reasons for terminating her are pretext for age

22  discrimination.

23  Plaintiff offers the following as evidence that Defendant's reasons for terminating her

24

25

26  [3]The same individual hired and terminated Plaintiff, which raises an inference that
Defendant did not act with discrimination.  *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d

27  267, 270-71 (9th Cir. 1996)("[W]here the same actor is responsible for both the hiring and
the firing of a discrimination plaintiff, and both actions occur within a short period of time,

28  a strong inference arises that there was no discriminatory action.").

1   were pretextual: 1) Defendant acted to get "rid of 68 year old Mrs. Branscomb, to get in 54

2   year old Ms. Flores;" and 2) customers loved Plaintiff's work.  Plaintiff also again mentions

3   that someone allegedly told the Arizona DES that Plaintiff voluntarily left her employment.

4   Plaintiff's theory that Defendant wanted to get rid of her in favor of a younger Ms.

5   Flores is just that – a theory, not evidence.  While some customers might have approved of

6   Plaintiff's work, Defendant has introduced evidence that other customers were not happy

7   with her work.  Defendant has maintained throughout this lawsuit and the proceedings before

8   the EEOC that it fired Plaintiff for deficient performance.  The fact that someone may have

9   told the Arizona DES, mistakenly or otherwise, that Plaintiff quit does not make Defendant's

10  proffered reasons for termination less credible.

11  The Court finds that Plaintiff has not met her burden of demonstrating that

12  Defendant's stated reasons for terminating her were pretext for age discrimination.  The

13  Court therefore will grant summary judgment to Defendant on Plaintiff's age discrimination

14  claim.

15  **3. Racial Discrimination**

16  Plaintiff has alleged claims for race discrimination under Title VII and 42 U.S.C.

17  §1981.  Courts apply the same legal principals to §1981 claims as to Title VII claims.  *Surrell*

18  *v. California Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008).  Courts analyze both

19  claims under the *McDonnell Douglas* burden shifting framework if a plaintiff has not

20  produced evidence that a discriminatory reason more likely than not motived the employer.

21  *Id.* at 1105.  Because Plaintiff has not produced such evidence, the Court will apply the

22  burden shifting framework to all her racial discrimination claims.

23  Under that framework, Plaintiff first must establish her prima facie case.  To make a

24  prima facie case using indirect evidence, Plaintiff must show: 1) she is a member of a

25  protected class; 2) she performed her job adequately; 3) she was terminated; and 4) that her

26  job went to someone outside of her protected class.  *See Coghlan*,  413 F.3d at 1094.

27  If Plaintiff meets her prima facie burden, then the burden of production shifts to

28  Defendant to provide legitimate, nondiscriminatory reasons for Plaintiff's termination.  *Id.*

- 12 -

1    If Defendant provides such reasons, then the presumption of discrimination drops out of the

2    case. *Id*. Plaintiff then bears the full burden of proving that Defendant intentionally

3    discriminated against her. *Id*. To meet this burden, Plaintiff must produce specific and

4    substantial evidence that Defendant's stated reasons for termination are pretext for racial

5    discrimination. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1031-32 (9th Cir.

6    2006).

7         The Court again will assume that Plaintiff has met her prima facie burden, although

8    the Court doubts whether she has demonstrated that she was performing her job adequately.

9    As stated earlier in the section on age discrimination, Defendant has proffered legitimate,

10   non-discriminatory reasons for terminating Plaintiff. The burden therefore shifts back to

11   Plaintiff to demonstrate pretext.

12        Plaintiff must provide "specific, substantial evidence of pretext." *Coleman*, 232 F.3d

13   at 1282. Plaintiff offers the following as evidence of pretext for racial discrimination: 1)

14   Plaintiff does not speak or understand Spanish, which was the primary language spoken by

15   management at the Tempe store; 2) Defendant originally marked on a form provided by the

16   Arizona DES that Plaintiff had voluntarily left her employment; 3) Defendant discarded

17   bridal receipts; 4) Ms. Sandra K. Williams, a former co-worker, observed management's

18   conduct, which evidenced an intent to get rid of Plaintiff and hire Ms. Flores; 5) there was

19   a "discriminatory scheme to get the Hispanic lady there and get the black lady out;" and 6)

20   Ms. Flores's application revealed that she had no seamstress experience. (Doc. 111-1, pp.15-

21   16.)

22        The fact that some of the employees at the Tempe store spoke to each other in

23   Spanish, which was perhaps their first language, does not indicate discrimination against

24   Plaintiff.[4] Neither Plaintiff nor Ms. Williams ever heard anyone make a racially derogatory

25

26        [4]*See Hogan v. Henderson*, 102 F.Supp.2d 1180, 1190 (D.Ariz. 2000)("Language can
     no doubt create barriers to unity within a mixed-language employment environment and it
27   is thus understandable that Hogan felt alienated when his knowledge of English alone, at
28   times, left him outside the social loop. But Title VII does not empower courts to apply a rule

- 13 -

1   statement to Plaintiff or about her.  Plaintiff might have felt left out of conversations, but that

2   is not actionable.

3          The Court has dealt previously in this Order with the Arizona DES form issue and

4   does not find that incident demonstrates pretext.  Nor does the Court find that Defendant's

5   discarding of bridal receipts indicates a lack of credibility.  Plaintiff has not pointed to any

6   specific bridal receipts that Defendant knew or should have known potentially would be

7   relevant in this law suit.

8          As for the testimony of Ms. Williams, if true, it demonstrates nothing more than some

9   employees' desire to replace Plaintiff with Ms. Flores.  Ms. Williams testified she had no

10  factual basis for her feeling that store management "wanted the Hispanic lady there and

11  wanted the black lady out."  (Williams Depo., pp. 52-53).  Ms. Williams's testimony does

12  not demonstrate that Defendant fired Plaintiff because of her race.

13         Ms. Flores may not have listed prior experience as a seamstress on her resume.  But

14  at the time Defendant hired Ms. Flores to replace Plaintiff, Ms. Flores had worked for

15  Defendant during Plaintiff's medical relieve and part-time after Plaintiff's leave.  Defendant

16  therefore had firsthand knowledge of her abilities as a seamstress.

17         The Court finds that Plaintiff has not introduced sufficient evidence to create an issue

18  of fact on pretext.  The Court therefore grants summary judgment to Defendant on Plaintiff's

19  Title VII and §1981 racial discrimination claims.

20         **4. Racial Harassment**

21         Plaintiff also alleges racial harassment under Title VII.[5]  Under Title VII, an employer

22  may not discriminate against an employee because of her race.  *Vasquez v. County of Los*

23  *Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).  To prevail on a hostile workplace claim based

24  on race, Plaintiff must show: 1) that she was subjected to verbal or physical conduct of a

25

26  of law that would require employers to enforce language restrictions while on the job.")

27         [5]The Court previously granted summary judgment to Defendant on Plaintiff's §1983

28  racial harassment claim because Defendant is not a state actor.

- 14 -

1
2
3
4

racial nature; 2) that the conduct was unwelcome; and 3) that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment.  *Id*.  The working environment must be both subjectively and objectively perceived as abusive.  *Id*.

5
6
7
8
9
10
11
12
13

Plaintiff has offered no evidence that she was subjected to verbal or physical conduct of a racial nature, let alone that such conduct was severe or pervasive.  In response to the Motion for Summary Judgment, she provides only the following: "While generally Plaintiff would need to establish facts of conduct a racial nature that is severe and pervasive so as to alter her employment, her subsequent termination following the parade of harassment as well as Group USA's false statement to DES precludes summary judgment." (Doc. 111-1, p. 17.) This statement standing alone, without citation to record evidence, does not begin to suffice. Because Plaintiff has not created an issue of fact as to a hostile work environment, the Court will grant summary judgment to Defendant on her Title VII racial harassment claim.

14
15

Plaintiff has failed to meet her burden on any of her claims, the Court therefore grants Defendant's Motion for Summary Judgment in its entirety.

16

### III. APPLICATION FOR ATTORNEYS' FEES

17
18
19
20
21
22
23
24

Defendant requests that the Court award it the $1974 in attorneys' fees incurred in opposing Plaintiff's Motion for Leave to Amend her Response to the Motion for Summary Judgment.  Plaintiff's counsel filed her Response to the Motion for Summary Judgment at the last possible minute on June 24, 2010.  On June 28, 2010, Plaintiff filed a Motion to Amend the Response (Doc. #111).  The Court granted the Motion to Amend, but noted that it did not condone the filing of what amounted to a placeholder filing and stated that it would entertain a motion for attorneys' fees spent by Defendant in responding to the Motion to Amend. (Doc. 114.)

25
26
27
28

"Three primary sources of authority enable courts to sanction parties or their lawyers for improper conduct:  (1)  Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power."

1   *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).  With respect to the third source, "the
2   federal courts [have] inherent power to levy sanctions, including attorneys' fees, for 'willful
3   disobedience of a court order ... or when the losing party has acted in bad faith, vexatiously,
4   wantonly, or for oppressive reasons.'" *Id.*  (internal citations and quotations omitted).  *See*
5   *also Aloe Vera v. United States*, 381 F.3d 986 (9th Cir. 2004).

6          Plaintiff's counsel requested leave to amend the Response purportedly to shorten it
7   to comply with page limitations, but the Amended Response actually did much more than
8   that.  The Court still feels that Plaintiff's counsel filed the original response as a place keeper
9   until she could file the finished product.  The Court does not condone this sort of tactic, but
10  the Court does not view Plaintiff's counsel's actions as a violation of Federal Rule of Civil
11  Procedure 11.

12         The Court sympathizes with Defense counsel's argument that it had to respond to a
13  very different Amended Response after already expending time drafting a reply to the
14  original Response.  Not only did Defense counsel have to alter its Reply, counsel also spent
15  time defending the Motion to Amend.  On the other hand, Defendant did not have to file a
16  detailed objection to the Motion to Amend.  Defendant could have noted its displeasure, but
17  acquiesced to the filing of an Amended Response.

18         After considering the arguments of both counsel, the Court will use its inherent
19  authority to sanction Plaintiff's counsel for filing an incomplete original Response, but in a
20  much smaller amount than requested by Defense counsel.  The Court will impose a sanction
21  of $200 on Plaintiff's counsel to be paid to Defense counsel as partial reimbursement for the
22  attorneys' fees spent by Defendant in responding to the Motion to Amend.

23         Accordingly,

24         IT IS ORDERED GRANTING Defendant's Motion for Summary Judgment (Doc.
25  104).

26         IT IS FURTHER ORDERED GRANTING in part Defendant's Application for
27  Attorneys' Fees (Doc. 115). Plaintiff's counsel shall pay $200 to defense counsel in
28  reimbursement to Defendant for attorneys' fees spent by Defendant in responding to the

1   Motion to Amend the Response.

2       DATED this 23rd day of September, 2010.

3

4

5                   James A. Teilborg
                United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28